IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEOBORAH A. WASIELEWSKI, )<br>)<br>Claimant, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Respondent. ) | No. 14 CV 3702<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Claimant Deborah A. Wasielewski ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.]

Pursuant to Federal Rule of Civil Procedure 56, Claimant has moved for summary judgment. [ECF No. 11.] For the reasons stated below, Claimant's Motion for Summary Judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on April 12, 2011, alleging a disability onset date of March 23, 2009. (R. 180, 215.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 75-76, 114-115, 141-142.) Claimant, represented by counsel,

appeared and testified before an Administrative Law Judge (the "ALJ") on August 21, 2012. (R. 37, 50-68.) Medical expert Sheldon J. Slodki, M.D. and Vocational Expert Glee Ann L. Kehr also testified. (R. 43-50, 68-74.)

On January 4, 2013, the ALJ issued a written decision denying Claimant's applications for benefits based on a finding that she was not disabled under the Social Security Act. (R. 20-30.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of March 23, 2009. (R. 22.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease at the L4-L5 level, trochanteric bursitis, irritable bowel syndrome, cholecystitis with cholelithiasis, bilateral carpal tunnel syndrome with splints, obesity, and a history of migraines. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. 22-23.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: she could never crawl, crouch, kneel, or climb ladders, ropes, or scaffolding; she could only occasionally balance, stoop, or climb ramps or stairs; she could perform frequent but not constant reaching and fine and gross manipulative tasks; and she could not have concentrated exposure to moving machinery or any exposure to unprotected heights. (R. 23.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 29.) However, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Claimant

could perform, including address clerk, telephone clerk, and order clerk. (R. 30.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 30.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 3-6.) *See Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is

deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. DISCUSSION

Claimant asserts that the ALJ made three errors. First, Claimant argues that the ALJ erred in not giving the opinion of her treating physician Dr. Bajaj "controlling or great weight," resulting in an RFC assessment that is unsupported by substantial evidence. Second, she contends that the ALJ's credibility analysis was improper. Third, she asserts that the ALJ erred by not considering all of her limitations in his step five determination.

### A. The ALJ's RFC Assessment Is Not Supported By Substantial Evidence

Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c). The opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).

Claimant has several impairments, of which the most severe is back pain. In September 2008 she was injured at work. (R. 53-54.) She testified that her pain has grown progressively worse since then. (*Id.*) Claimant's back issues have been treated primarily by Prempeet Singh

4

Bajaj, D.O. in the orthopedic department of Loyola University Medical Center. (R. 493-496, 803.) Starting on August 3, 2010, and continuing approximately once a month for the two years leading up to Claimant's hearing, Dr. Bajaj either personally examined Claimant or was present as a resident examined her. (R. 445-496, 743-782.) During these visits, Claimant reported pain levels ranging from 5/10 to 9/10, most frequently reporting pain of 7/10 or 8/10. By December 2010, physical therapy had yielded "minimal relief." (R. 486.) Two facet block injections performed by Dr. Bajaj in December 2010 and February 2011 provided significant relief, even to the point of allowing Claimant to sleep on her more-painful left side, but only for four or five days each. (R. 411.) In response to pain in her buttock, Dr. Bajaj also performed a left sacroiliac join injection in March 2011, which provided some relief, though her back pain remained. (R. 468, 471.) Based on the success of the facet blocks, Dr. Bajaj concluded that Claimant would be a candidate for radiofrequency ablation, a procedure which involves burning the affected nerves in an attempt to relieve pain, which he performed under fluoroscopy on May 11, 2011. (R. 464-466, 468.) Despite this intervention, Claimant reported on May 23 that her pain was worse than before. (R. 459.) A May 25, 2011 MRI revealed diffuse disc bulging and mild foraminal narrowing at L4-L5. (R. 463.)

In July 2011, Dr. Bajaj referred Claimant to orthopedic spinal surgeon Dr. Alexander J. Ghanayem M.D., who noted multiple areas of localized tenderness consistent with fibromyalgia but only "mild disc degeneration" on her MRI scan. (R. 449.) The surgeon ultimately concluded that surgery was not indicated, opining, "there is really nothing else I can offer her from a surgical standpoint to help her symptoms." (*Id.*) Dr. Bajaj continued to prescribe medications, including Norco, methadone and oxycodone, which succeeded in bringing her pain level from a high of 9/10 to 6/10. (R. 442, 775, 778-779.) In January 2012, Claimant indicated that she had

5

back pain radiating down her left leg, which Dr. Bajaj treated with an epidural steroid injection. (R. 755-756, 762.) The injection relieved the radiating pain, but she still experienced worsening pain in her lower back. (R. 743.) Dr. Bajaj also treated Claimant for hip pain and groin pain and administered injections into her right hip on May 12 and August 24, 2012. (R. 802-802, 810, 822-823.)

Dr. Bajaj completed a Residual Functional Capacity Questionnaire on September 26, 2012, in which he opined that Claimant's chronic low back pain and recent-onset groin pain rendered her physically incapable of performing work for eight hours a day, five days a week on a sustained basis. (R. 819-820.) Specifically, she could sit for four hours total in an eight-hour workday, for 30 minutes at a time. She could stand/walk for one hour in an eight-hour workday, for 10 minutes at a time. She would regularly need to take five-minute breaks to stand. She could lift 10 pounds only occasionally but no weight frequently, but she had no limitations in repetitive reaching, handling, or fingering. (R. 820.) Her pain frequently interfered with her attention and concentration, and she would miss three to four days of work per month due to her impairments. (*Id.*)

The ALJ declined to extend "controlling or great weight" to Dr. Bajaj's opinion, finding the testimony of Dr. Slodki, the medical expert who testified at the hearing, to be more persuasive. (R. 28.) The ALJ articulated two specific criticisms of Dr. Bajaj's opinion. First, he found it unsupported by a record that lacked evidence of "neurological deficits" or "more serious abnormalities" on Claimant's scans. (*Id.*) Second, the ALJ stated that if Dr. Bajaj really believed that Claimant's condition disabled her, he would have more aggressively pursued surgery. (R. 28-29.) Neither proffered reason withstands scrutiny. First, as the Seventh Circuit has repeatedly noted, "pain alone can be disabling," *Stark v. Colvin*, 813 F.3d 684 (7th Cir.

6

2016), even in the absence of objective test results that evidence a disabling condition. *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004). Second, the record shows that Dr. Bajaj did pursue the possibility of surgery by referring Claimant to a board-certified orthopedic spinal surgeon, Dr. Ghanayem. The surgeon examined Claimant and her MRI results and concluded that surgery was not indicated. By faulting Dr. Bajaj for failing to pursue a treatment plan that no medical opinion or evidence supports, the ALJ improperly substituted his own judgment for that of Claimant's doctors. *See Clifford v. Apfel,* 227 F.3d at 870 (citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")) In sum, the ALJ failed to provide the requisite "sound explanation" for his failure to give controlling weight to the opinion of Claimant's treating physician. *Punzio v. Astrue,* 630 F.3d 734, 740 (7th Cir. 2011).

Moreover, even when an ALJ decides for good reasons not to give controlling weight to a treating physician's opinion, he must determine what weight to give it by considering a number of factors. *See* 20 C.F.R. § 404.1527(c), 416.927(c). These factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). A contradictory opinion of a nonexamining physician is not, by itself, sufficient grounds for rejecting a treating physician's opinion. *See Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).

The record contains ample evidence of Claimant's extensive treatment relationship with Dr. Bajaj. In weighing the competing medical opinions, the ALJ acknowledged that Dr. Bajaj treated Claimant at Loyola University Medical Center. (R. 28.) However, he did not mention

7

Dr. Bajaj by name in his summary of Claimant's treatment history, despite their many encounters. (R. 24-25.) Nor did the ALJ explain how or whether he considered the length and extent of their treatment relationship in his decision not to give Dr. Bajaj's opinion about Claimant's abilities "great or controlling weight." Additionally, in discounting Dr. Bajaj's reports because he did not more aggressively pursue surgery, the ALJ did not account for the extensive treatments that Dr. Bajaj did perform. Under Dr. Bajaj's care, Claimant had two facet block injections (R. 418, 480-481), radiofrequency ablation of the facet joints (R. 464-465), a left sacroiliac joint injection (R. 671-672), an epidural steroid injection (R. 755), and two steroid injections in her right hip (R. 802, 822.) Over the two years he treated her, he prescribed a variety medications including Tylenol, Norco, gabapentin, cyclobenzaprine (Flexeril), oxycodone with acetaminophen (Percocet), methadone, morphine, and oxycodone. (*See, e.g.,* R. 445, 452, 811.) The procedures Dr. Bajaj performed and the drugs he prescribed each came with their attendant risks, including the risk of nerve injury (R. 465, 765, 822) and the possibility of serious side effects or opioid dependence from medications. (R. 500.) Dr. Bajaj in his opinion letter confirmed that Claimant did in fact suffer medication side effects including dizziness, drowsiness, confusion, and constipation. (R. 819.) It seems unlikely that Dr. Bajaj would have subjected a patient to these risks and side effects if he ultimately did not believe her reports of pain.

The ALJ found the opinion of Dr. Slodki "more persuasive" than that of Dr. Bajaj because he said Dr. Slodki had reviewed all of the medical records and provided "a good explanation of the evidence he was relying on." (R. 28.) The records that Dr. Slodki, who is board certified in internal medicine, reviewed included records of Claimant's treatments for migraine headaches, her gallbladder removal surgery and follow-up procedure, left knee pain,

8

and carpal tunnel syndrome in addition to her back impairments. (R. 44-46.) However, this does not provide sufficient reason to weight his opinions with respect to Claimant's back pain over those of Dr. Bajaj, a rehabilitative spine specialist who for two years treated Claimant specifically for her back disorders. The ALJ also stated that Dr. Slodki had the opportunity to observe Claimant's hearing testimony. (R. 28.) This is inaccurate, as Dr. Slodki rendered his opinions before Claimant testified, before she described the pain she was then experiencing, and before she shifted to a standing position approximately 38 minutes after the hearing started. (R. 36, 43-50, 58-59, 68.) Therefore, Dr. Slodki cannot be said to have had the benefit of observing her testimony before he rendered his opinion.

**B. The ALJ Should Re-Evaluate Claimant's Subjective Statements On Remand**

This case requires remand to correct the above-discussed errors in the evaluation of opinion evidence. On remand, the ALJ also should take the opportunity to re-evaluate the intensity and persistence of Claimant's symptoms in light of the Administration's recent Policy Interpretation Ruling regarding the evaluation of symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1.

The factors that ALJs must consider in evaluating the intensity, persistence, and limiting facts of an individual's symptoms remain unchanged. *See* SSR 16-3p, 2016 WL 1119029, at *7, citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Among the factors to consider are the medications and treatments an individual has received for relief of pain or other symptoms. Here, the ALJ summarized the record evidence of Claimant's treatments and medications. (R. 24-25.) However, he did not explain how he considered those treatments in evaluating the

intensity, severity, and persistence of Claimant's pain. Just as it seems unlikely that her doctor would have performed risky interventions if he did not believe she was in pain, it seems unlikely that Claimant would have undergone two years of interventions and treatments—at least two courses of physical therapy, two injections into her facet joints, a radiofrequency ablation of the nerves to her facet joints, three injections into her hip joints, an injection into the epidural space of her lower spine, and numerous medications including strong narcotics—just to feign pain symptoms. *See Carradine v. Barnhart*, 360 F.3d at 755; *see also Heeman v. Astrue*, 414 Fed. App'x. 864, 868 (7th Cir. 2011).

The ALJ also gave examples of what he considered symptom exaggeration in Claimant's testimony, two of which appear to misstate the record. The ALJ refers to "numerous occasions" in the treatment notes when Claimant reports her pain at 9 or even 10 out of 10. (R. 27.) Neither he nor the Commissioner has directed the Court to the pages of the record that support this finding. There is one notation of 10/10 pain that occurred during Claimant's 5-night hospital stay in April 2012, after gallbladder surgery, when she developed pancreatitis. (R. 684-887.) As for Claimant's ongoing reports of pain, the record indicate levels ranging from 5/10 to 9/10 during visits to Dr. Bajaj, which suggests only that her pain fluctuated and sometimes improved with new treatments. (R. 626-627.) The ALJ also attributed to Claimant testimony that she is sometimes bedridden by her migraines and other ailments for "five or six days at a time;" he then dismissed this claim as unsupported by the medical evidence. (R. 27.) But Claimant did not say she stays in bed five or six days at a time; she said she stays in bed due to pain five or six days "out of a month." (R. 61.) On remand, the ALJ should carefully reassess the severity, persistence, and limiting effects of Claimant's symptoms in light of the record evidence, pursuant to the guidance provided by SSR 16-3p.

### C. Step Five Determination

Claimant argues that the ALJ erred at step five by not including all of her impairments in the hypothetical questions he presented to the vocational expert at the hearing. The Commissioner correctly responds that this is a restatement of the Claimant's RFC argument, and therefore the Court will not address it separately.

### IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 11] is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 13, 2016